IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for CENTENNIAL BANK,<br><br>    Plaintiff,<br><br>vs.<br><br>CLINT E. WILLIAMS, SUZANNE GNEHM, LARRY E. GRANT, W. ALAN THOMSON, BRUCE H. JONES, R. SCOTT PRIEST, NEIL J. WALL<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:13-CV-00883<br><br>Judge Dee Benson |

This matter is before the court on Defendants' Motion to Dismiss the First Amended Complaint. (Dkt. No. 25.) Defendants, Clint E. Williams, Suzanne Gnehm, Larry E. Grant, W. Alan Thomson, Bruce H. Jones, R. Scott Priest, and Neil J. Wall (collectively "Defendants"), are former officers and directors of the failed Centennial Bank, a federally insured depository institution. The Federal Deposit Insurance Corporation, as receiver for the bank ("FDIC-R"), seeks to hold Defendants liable for certain loans made and approved during Defendants' employment. The FDIC-R's First Amended Complaint asserts claims for gross negligence and, in the alternative, breach of fiduciary duty. A hearing on Defendants' motion was held on August 29, 2014. Plaintiffs were represented by Cecilia M. Romero, John P. Harrington, James B. Davidson, Lori Irish Bauman, and Heidee Stoller. Defendants were represented by Gregory C. Scaglione and Joann Shields. After the hearing, the court took the matter under advisement.

1

Having reviewed the arguments made at the hearing, as well as the parties' briefs and the relevant law, the court enters the following Memorandum Decision and Order.

## BACKGROUND

Centennial Bank was established on April 2, 1997, as a state nonmember bank in Ogden, Utah. (FAC ¶ 20).[1] Defendants are seven former directors and/or officers of Centennial (Id. at ¶ 2), who served on either the In-House Loan Committee, the Board Loan Committee, or both. (Id. at ¶¶ 10-16.) Centennial's lending activities specialized in acquisition, development and construction loans, with an emphasis on commercial real estate. (Id. at ¶¶ 2 & 21.) In its complaint, the FDIC-R alleges that Defendants approved sixteen high-risk loans ("Loans") in violation of the Bank's lending policies and prudent lending practices. The complaint alleges that Defendants' acts and omissions in approving these Loans caused losses of at least $11.2 million. The relevant Loans were all approved, made, and funded between August 31, 2006 and February 8, 2008. (Id. at ¶ 39.) Centennial failed on March 5, 2010, on which date the FDIC-R was appointed receiver.

In June 2012, the FDIC-R sent letters to six of the seven Defendants, setting out its claims against them and inviting those Defendants to engage in pre-suit settlement discussions.[2] In an effort to resolve the claims without litigation, the parties agreed that the FDIC-R would defer filing suit if Defendants promised to toll the statute of limitations and not assert any statute of limitations defense or other defense based upon the passage of time in the event of future litigation. (Id. ¶ 166.) Several weeks later, the parties signed a Tolling Agreement effective as of February 19, 2013. (Id. ¶¶ 167-170.)

---

[1] All references to "FAC" are abbreviations for the First Amended Complaint (Dkt. No. 38).
[2] The FDIC-R issued a claim letter to the seventh Defendant in December 2012. (Id. ¶ 164.)

In Paragraph four of the Tolling Agreement, Defendants agreed not to raise any statute of limitations defense:

> In the event that legal action is commenced between the Parties for any reason, no Party shall raise or be permitted to raise any defense predicated on the expiration of any Statutes of Limitations during the period from the Effective Date to and including the Termination Date.

(Id. Ex. 1, at 2.)

In Paragraph fourteen of the Tolling Agreement, Defendants agreed not to challenge the validity or enforceability of the Tolling Agreement:

> Each Party severally acknowledges and agrees . . . that he, she or it shall not raise any claims as to the invalidity or unenforceability of all or any part of this Tolling Agreement.

(Id. Ex. 1, at 4.)

The parties then entered into an extension of the Tolling Agreement, effective June 6, 2013 ("First Extension"). (Id. Ex. 2.) The First Extension amended a few provisions of the Tolling Agreement without altering any of the other provisions. In particular, Defendants agreed "to extend the tolling date" and keep the Tolling Agreement "in effect through August 30, 2013." (Id. Ex. 2, ¶ 2.)

On July 26, 2013, the FDIC-R participated in mediation with two of the Defendants. No resolution was reached. (Id. ¶ 176.)

On August 29, 2013, Defendants and the FDIC-R entered into a second extension of the Tolling Agreement effective on August 26, 2013 ("Second Extension"). (Id. ¶ 177, Ex. 3.) The Second Extension was identical to the First Extension, except that it changed the Termination Date so that the Tolling Agreement would remain "in effect . . . through . . . September 30, 2013." (Id. Ex. 3, ¶ 2.)

The parties then participated in mediation on September 26, 2013, which was unsuccessful. The following day, September 27, 2013, the FDIC-R filed its Initial Complaint. (Id. ¶ 178.)

## DISCUSSION

**I.     The Statute of Limitations for FDIC-R's Claims**

Defendants assert that under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), the FDIC-R's claims are time-barred as a matter of law, and that the court thus lacks subject matter jurisdiction over this case.

Commonly referred to as the "Extender Statute," section 1821(d)(14)(A-B) of FIRREA provides the FDIC with an extended statute of limitations in pursuing claims in its role as conservator or receiver of a failed depository institution. The Extender Statute provides as follows:

(A) In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—

    (i) in the case of any contract claim, the longer of—

        (I) the 6-year period beginning on the date the claim accrues; or

        (II) the period applicable under State law; and

    (ii) in the case of any tort claim (other than a claim which is subject to section 1441a(b)(14) of this title), the longer of—

        (I) the 3-year period beginning on the date the claim accrues; or

        (II) the period applicable under State law.

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14).

For tort claims, the statute first determines the length of the limitations period itself. In paragraph (A), the statute indicates that "the applicable statute of limitations . . . shall be . . . *the longer of* (I) the 3-year period beginning on the date the claim accrues; or (II) the period applicable under State law." Id. (emphasis added). Thus, the statute provides two possible sources for the limitations period: the 3-year period provided in the federal statute, or the period applicable under state law. The court is directed to choose whichever period is longer.

In subparagraph (B), the statute then sets out the date on which the limitations period will begin to run. It provides that "the statute of limitations begins to run on . . . *the later of* (i) the date of appointment" of the FDIC as receiver, or (ii) "the date on which the cause of action accrues." Id. (emphasis added).

Because the court must choose the later of these two dates, the parties agree that the statute of limitations in this case began to run on March 5, 2010, when the FDIC was appointed receiver. (See Def.s' Mot. to Dismiss, 7-8.)[3]

## II. Existence of Claims on the Date of Receivership

Next, the parties also agree that the FDIC-R can only obtain the benefit of FIRREA's extended statute of limitations if its claims were timely on the date that it was appointed as receiver. See FDIC v. Regier Carr & Monroe, 996 F.2d 222, 225 (10th Cir. 1993) ("If the state

---

[3] (Admitting that "regardless of whether 'the 3-year period beginning on the date the claim accrues' or 'the period applicable under State law' is applied, FDIC-R's clock started to run no later than March 5, 2010.").

5

statute of limitations has expired before the government acquires a claim, it is not revived by transfer to a federal agency.").

However, the parties disagree as to which claims were still viable on the date of receivership. Assuming the appropriate limitations period is three years,[4] the court finds that the claims relating to all sixteen Loans were still viable on March 5, 2010. In making this finding, the court adopts the majority position that the accrual of claims is a question of State law as opposed to one of federal common law.

Defendants, however, take the latter position that accrual is a question of federal common law. They claim that the Extender Statute only incorporates the "time period" applicable under state law, not the state law regarding the accrual of claims. See Nat'l Credit Union Admin. Bd. v. Credit Suisse Secs. (USA) LLC, 939 F.Supp.2d 1113, passim (D. Kan. 2013) (holding that only the state law limitations period is incorporated into the Extender Statute, not other state law). Under defendants' theory, "a cause of action on an improper loan accrues *at the time the loan is made.*" See Farmers & Merchants Nat. Bank v. Bryan, 902 F.2d 1520, 1522 (10th Cir. 1990) (emphasis added). If the court were to adopt this reasoning, eight of the sixteen Loans would be time-barred because they were made more than three years prior to receivership on March 5, 2010. (See Def.s' Mem. in Supp., iii.)

However, soon after this reasoning was adopted by the Tenth Circuit in the Farmers & Merchants case, the Supreme Court decided two cases which dramatically impact cases brought by the FDIC. See O'Melveny & Myers v. FDIC, 512 U.S. 79 (1994); and Atherton v. FDIC, 519 U.S. 213 (1997). Both of these cases reinforce the holding in Erie Railroad Co. v. Tompkins,

---

[4] The parties also disagree about whether the appropriate initial limitations period is three or four years under Utah law. The court, however, does not need to decide this issue because even assuming the appropriate period is three years (for both officers and directors), the court finds, for the reasons discussed next, that the claims relating to all sixteen Loans were still viable as of the date of receivership.

304 U.S. 64, 78 (1938) that there is no general federal common law.[5] According to O'Melveny, federal common law rules are acceptable only when there is a "significant conflict between some federal policy or interest and the use of state law." 512 U.S. 79, 87 (1994) (citations omitted). Relevant to this case, the Court in O'Melveny made it clear that the FDIC steps into the shoes of an insolvent bank to work out the bank's claims under *state law* "except where some provision in the extensive framework of FIRREA provides otherwise." Id. Thus, the question of when a cause of action accrues is governed by Utah law, not federal common law, unless Utah law conflicts with FIRREA or some other federal statutory provision. Because Defendants cannot point to any such conflict, Utah law governs in this instance.

Under Utah law, a cause of action does not accrue until "the happening of the last event necessary to complete the cause of action." Russell Packard Development, Inc. v. Carson, 108 P.3d 741, 746 (Utah 2005) (internal quotation marks omitted). Indeed, "until there is actual loss or damage resulting to the interests of another, a claim for negligence is not actionable." Seale v. Gowans, 923 P.2d 1361, 1364 (Utah 1996) (citation and internal quotation marks omitted). Accordingly, "even though there exists a possibility, even a probability, of future harm, it is not enough to sustain a claim, and a plaintiff must wait until some harm manifests itself." Id. at 1364-65.

Thus, under settled precedent from the Utah Supreme Court, until the Bank suffered actual damage related to the Loans, the Utah limitations periods for the FDIC-R's tort claims did not begin to accrue. Other jurisdictions that similarly follow Utah's "last event" rule have held that a bank does not suffer actual damage for claims arising from loans until the loan goes into

---

[5] As discussed here, "'federal common law' is a rule of decision that amounts, not simply to an interpretation of a federal statute or a properly promulgated administrative rule, but, rather, to the judicial creation of a special federal rule of decision." Atherton, 519 U.S. at 218 (internal quotation marks and citations omitted).

default.  See FDIC v. Stahl, 89 F.3d 1510, 1522-23 (11th Cir. 1996) (applying Florida law).  In Stahl, the Eleventh Circuit noted that, under Florida law, "[a] cause of action accrues when the last element constituting the cause of action occurs," and thus "actions for negligence do not accrue until the plaintiff suffers some type of damage."  89 F.3d at 1522 (citation omitted).  The court stated that:

> The damage in this case did not occur until the loans at issue were not repaid, at which point the FDIC should have been alerted to the existence of a negligence cause of action. Thus, we conclude the district court correctly determined that the statute of limitations did not begin to run on these claims until the loans failed.

Id.

The Eleventh Circuit's analysis highlights the fact that negligently approved loans do not necessarily result in actual damages because the loans might nevertheless be repaid.  Thus, because none of the loans defaulted before March 6, 2007 (less than three years before the Bank failed), the FDIC-R's claims were still viable under Utah law on the date of receivership, and the limitations period on all sixteen Loans began anew under the Extender Statute.[6]  (See Pl.'s Mem. in Opp., xiv.)

## III. The Tolling Agreements

Despite the viability of FDIC-R's claims as of March 5, 2010, Defendants argue that the claims are still time-barred because tolling agreements are void under the plain language of the statute.  If the Tolling Agreements are deemed invalid, FDIC-R's claims would have expired on March 5, 2013, over six months prior to when it filed suit.

---

[6] Alternatively, regardless of when the claims accrued, the court notes that Utah Code § 7-2-23(2), which is simply a codification of the "adverse domination" doctrine, would apply in this case. Accordingly, the present claims against Defendants would be preserved until receivership even if the claims would have already accrued otherwise.  See FDIC V. Paul, 735 F.Supp. 375, 378-80 (D. Utah 1990) (holding that Section 7-2-23(2) was the Utah legislature's way of codifying the adverse domination doctrine and therefore that, as a matter of law, the FDIC's claims accrued when it acquired the claims upon receivership.).

In response, FDIC-R argues that tolling agreements are permissible under the Extender Statute, and therefore that the initial Tolling Agreement, along with the First and Second Extensions, effectively tolled the date that it could bring suit until September 30, 2013.

The Extender Statute begins with the directive that, "Notwithstanding any provision of any contract, the applicable statute of limitations . . . *shall be*" the later of three years beginning on the date the claim accrues, or the period applicable under State law. 12 U.S.C. § 1821(d)(14)(ii) (emphasis added). Defendants assert that the "Notwithstanding any provision of any contract" language precludes any attempt to toll the applicable limitations period. Defendants rely almost entirely on National Credit Union Administration Board v. Credit Suisse Securities (USA) LLC ("NCUA") from the District of Kansas for this proposition. 939 F.Supp.2d 1113 (D. Kan. 2013).

However, the court finds that the Extender Statute permits tolling agreements. On its face, Section 1821(d)(14) does not prevent parties from contracting to "toll" or temporarily suspend the statute of limitations, and no court in the nearly quarter century since the enactment of FIRREA in 1989, with the exception of the NCUA court, has concluded otherwise.[7]

---

[7] The NCUA decision relied almost exclusively on its own interpretation of Midstate Horticultural Co., Inc. v. Pennsylvania R. Co., 320 U.S. 356 (1943) to support its conclusion that the applicable statute of limitations in question may not be tolled. See NCUA, 939 F. Supp.2d at 1125, 1133. However, the statute of limitations in Midstate—the Interstate Commerce Act ("ICA")—was worded differently from the Extender Statute and had a different objective and policy. The ICA statute of limitations provided that: "All actions at law by carriers . . . for recovery of their charges . . . shall be begun within three years from the time the cause of action accrues, *and not after*." 320 U.S. at 357 (emphasis added). The ICA's limiting language, "and not after," seems to preclude any extension through tolling. In contrast, the Extender Statute is missing these three key words, or any comparable language.
  Even despite the substantially different wording used in the ICA, the Supreme Court in Midstate still concluded that such language in and of itself was insufficient to preclude tolling agreements. The Court noted that the key inquiry was whether Congress intended to extinguish the right (which would preclude it from being suspended by agreement) or to bar the remedy (which would permit tolling by agreement). Applying this rationale to the present case, and as noted next, allowing tolling agreements seems consistent with congressional intent.

Importantly, when construing a statute, a court should "not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.") (citation omitted). U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 455 (1993). Here, the object and policy of FIRREA is consistent with allowing parties to toll the limitations period. When Congress enacted FIRREA, it did so "in the face of a national banking crisis, with the intent of maximizing the recovery of assets that the federal receivers (FDIC, RTC) held in the failed banks they inherited." RTC Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indem. Co., 169 F.3d 448, 456 (7th Cir. 1999); accord NCUA v. Nomura Home Equity Loan, Inc., 727 F.3d 1246, 1262 (10th Cir 2013) (finding that Congress "enacted FIRREA in the wake of the wide-spread financial crisis caused by failures of the savings and loan associations."). Indeed, the FDIC pursues actions like this one against former bank officers and directors "in order to replenish the insurance fund that has been used to cover the losses allegedly caused by the directors and officers." FDIC v. Bierman, 2 F.3d 1424, 1439 (7th Cir. 1993). In doing so, the FDIC's task is to "maintain confidence in the soundness of the nation's banking system." Id.

As Senator Donald W. Riegle, Jr., the sponsor of FIRREA, stated on the floor of the Senate at the time of FIRREA's enactment:

> [The statute of limitations provisions] are of the utmost importance. Extending these limitations periods will significantly increase the amount of money that can be recovered by the Federal Government through litigation, and help ensure the accountability of the persons responsible for the massive losses the Government has suffered through the failures of insured institutions. The provisions should be construed to maximize potential recoveries by the Federal Government by preserving *to the greatest extent permissible by law* claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods.

135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989) (emphasis added).

Accordingly, the court finds that the Tolling Agreements in this case were valid and allowed the FDIC-R to file suit before September 30, 2013.

## IV.   FDIC-R's Gross Negligence and Breach of Fiduciary Duty Claims

A complaint need only "contain sufficient factual matter . . . to state a claim for relief that is plausible on its face." Gee v. Pacheco, 627 F.3d 1178, 1184 (10th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is facially plausible if the factual allegations "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief must be granted." See Cohon v. State of New Mexico Depart. of Health, 646 F.3d 717, 725 (10th Cir. 2011) (quoting Sunrise Valley, LLC v. Kempthorne, 528 F.3d 1251, 1254 (10th Cir. 2008), cert. denied, 556 U.S. 1234 (2009) (quoting Sutton v. Utah State School for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)) (emphasis added). The court is satisfied that the First Amended Complaint states facts sufficient to show a plausible claim for gross negligence. (See Pl.'s Mot. in Opp., 28.)

Next, Defendants argue that Plaintiffs fail to state a claim for breach of fiduciary duty, and additionally, that this claim is improperly duplicative of Plaintiff's gross negligence claim. Because Utah state law authorizes a breach of duty claim against officers and directors based on gross negligence, it is permissible under FIRREA. Given the early stage of the pleadings, and the liberal pleading requirements of rule 8(d)(2), the court is satisfied that Plaintiff's alternative claim of breach of fiduciary is permissible. Furthermore, the court finds that Plaintiff's claim is sufficiently plausible to withstand dismissal.

## **CONCLUSION**

Because the court finds that Plaintiff's claims were viable on the date of receivership, and that tolling agreements are consistent with the object and policy of FIRREA, the court finds that Plaintiffs suit is not time-barred. Additionally, because the court finds that Plaintiffs have sufficiently plead facts to show plausible claims of gross negligence and breach of fiduciary duty, the court hereby **DENIES** Defendants' Motion in its entirety.

SO ORDERED.

DATED this 8 day of October 2014.

_____
Dee Benson
United States District Judge